# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

JOHNNY RAY THORNTON,              :

    Plaintiff,                    :

vs.                               :       CA 2:09-0461-C

MICHAEL J. ASTRUE,                :
Commissioner of Social Security,

    Defendant.                    :

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the undersigned, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 23 & 25 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and the parties' arguments at the January 29, 2010 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for

further proceedings not inconsistent with this decision.[1]

Plaintiff alleges disability due to schizoid personality disorder, depressive disorder, and panic disorder/agoraphobia/anxiety disorder with an onset date of October 13, 2004. (Doc. 17, pp. 1-2.) The Administrative Law Judge (ALJ) made the following relevant findings:

**3. The claimant has the following severe impairments: schizoid personality disorder, anxiety and depression (20 C.F.R. 404.1521 *et seq*. and 416.921 *et seq*.).**

The claimant has recently (May 27, 2008) been diagnosed as having dysthymia and panic disorder with agoraphobia. The claimant is not receiving mental health treatment. The claimant's dysthymia and panic disorder with agoraphobia have not existed for a sufficient time for an appropriate longitudinal evaluation to be performed. Therefore, I cannot readily find that the claimant's dysthymia and panic disorder with agoraphobia are severe mental impairments which have lasted or are expected to last for a period of twelve continuous months.

In the application and related documentation, the claimant alleged disability by reason of mental instability– trouble interacting with people.

. . .

**4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).**

The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.08. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 25 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

2

two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has none to mild restriction[s]. In social functioning, the claimant has marked difficulties. With regard to concentration, persistence or pace, the claimant has none to mild difficulties. As for episodes of decompensation, the claimant has experienced no episodes of decompensation[] which have been of extended duration in the last eighteen months to two years.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

**5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels with the limitations/consideration[s] in Exhibits 3F and 4F and as set forth in medical expert testimony.**

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927

and SSRs 96-2p, 96-5p, 96-6p[,] and 06-3p.

. . .

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The record reflects that the claimant has made inconsistent statements regarding matters relevant to the issue of disability. The claimant told Dr. Reynolds in November 2006 and also testified at the hearing in November 2008 that he has no friends. In direct contrast to this, the claimant told Dr. Hodo in May 2008 that he has two (2) friends. The claimant testified at the hearing in November 2008 that he does not go shopping. On the other hand[,] the claimant completed a daily activities questionnaire (Exhibit 3E) reporting that he goes shopping for personal needs once or twice a week. The claimant completed a medication list in October 2008 indicating that he took Paxil and testified at the hearing in November 2008 that he still takes the medicine that was prescribed. Yet, the claimant told Dr. Hodo in May 2008 that he was no longer taking Paxil. Although the inconsistent information provided by the claimant may not be the result of a conscious attempt to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable.

The record indicates that the claimant stopped working for reasons not related to the allegedly disabling impairments. The claimant told Dr. Reynolds that he was fired due to financial difficulties and a salary dispute.

As for the opinion evidence, I give little weight to the opinions offered by Dr. Hodo. The doctor's medical source opinions and his narrative report appear to contain inconsistencies, and the doctor's opinion is accordingly rendered less persuasive. It is emphasized that the claimant underwent the examination that formed the basis of the opinions in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, the doctor was presumably paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored.

After considering all of the evidence of record as to this claimant's impairments, I accept the testimony of our medical expert because I find that the testimony is

credible[,] makes sense[,] and[,] as an independent finder of facts[,] [I] believe the testimony to be true, accurate[,] and correct.

The residual functional capacity conclusions reached by the psychologists employed by the State Disability Determination Services also support[] a finding of 'not disabled.'

**6. The claimant has past relevant work as a Material Handler (Heavy, Semi-Skilled), General Laborer (Heavy, Unskilled), and Production Worker (Medium, Semi-Skilled). The claimant is capable of performing all of his past relevant work. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).**

In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as actually and generally performed.

**7. The claimant has not been under a disability, as defined in the Social Security Act, from October 13, 2004[,] through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).**

(Tr. 17, 25-26 & 26-27 (emphasis in original).) On June 12, 2009, the Appeals Council denied Thornton's request for review (Tr. 1-3), and so the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and

work history. *Id*. at 1005. Once the claimant meets this burden, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education, and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985.)

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he retains the residual functional capacity (RFC) to perform a full range of work at all exertional levels and, therefore, can perform his past relevant work (Tr. 26-27), is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). As the Eleventh Circuit has stated, when determining whether substantial evidence exists, "we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In this case, Plaintiff contends that the following errors were made: (1) the ALJ ignored the opinion of the treating psychiatrist, Dr. Srilata Anne; (2) the ALJ improperly rejected the opinion of Dr. David Hodo; (3) the ALJ ignored the lay testimony of a third party; (4) the ALJ improperly found none to mild restriction in activities of daily living; (5) the ALJ improperly determined that he does not meet Listing 12.04, Listing 12.06, and/or Listing 12.08; and (6) the Appeals Council failed to consider the report of Dr. John Goff. (Doc. 18, pp. 2-12.) Because the undersigned agrees with plaintiff that the ALJ

erred to reversal in ignoring the opinion of Dr. Srilata Anne, the staff psychiatrist at West Alabama Mental Health Center, this Court need not consider the other assignments of error raised by Thornton. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the misuse of the expert's testimony alone warrants a reversal, we do not consider the appellant's other claims.").[2]

    A.    **Opinion from a Medical Source**. Thornton has received treatment at the West Alabama Mental Health Center since August 31, 2005. (Tr. 198-204.) On May 15, 2007, he was examined by the staff psychiatrist, Srilata Anne, M.D. (Tr. 180.) In a document headed "Psychiatric Assessment," Dr. Anne reported that Thornton related that he felt depression, hopelessness, helplessness, stress, sadness, withdrawal, and general apathy. (*Id.*) Dr. Anne diagnosed Thornton as suffering from an adjustment disorder with "mixed anxiety and depressed mood" and panic disorder. (Tr. 181.) Notably, Dr. Anne assigned Thornton a Global Assessment of Functioning (GAF) score of 50, indicating, even by defendant's admission, "severe problems." (*Id.*; *see also* Doc. 21, p. 6.)

When the ALJ reviewed the treatment records from the West Alabama Mental Health Center, however, he described Thornton's condition on the date of his examination with Dr. Anne quite dissimilarly, stating:

---

[2] In addition, as set forth below, there is an another reason, not raised by plaintiff, why this cause need be remanded to the Commissioner of Social Security for further proceedings not inconsistent with this decision.

> The claimant presented on May 15, 2007, with problems adjusting to daily stressors, positive anxiety, some depressed mood, history of childhood trauma, [and] almost total isolation. The claimant was assessed as having adjustment disorder with mixed anxiety and depressed mood; F/O post traumatic stress disorder; R/O Anxiety Disorder NOS. The claimant was prescribed Paxil and Vistaril.

(Tr. 22.) Nowhere in his opinion did the ALJ note that Dr. Anne had assigned Thornton with a GAF score of 50. Moreover, it appears that the ALJ lifted his description of Thornton's visit with Dr. Anne from the "Service Ticket" completed by direct care and nursing staff members, not Dr. Anne herself. (Tr. 179.) As plaintiff notes, the direct care staff's diagnoses of Thornton's condition actually differ from those offered directly by Dr. Anne. (*Compare* Tr. 180-181 *with* Tr. 179.)

The ALJ's decision to ignore the GAF score given to Thornton by a medical source constitutes reversible error and must be addressed on remand. In *Caldwell v. Barnhart*, 261 Fed.Appx. 188 (2008) (per curiam), the Eleventh Circuit stated that "[a]n ALJ's failure to state with particularity the weight given different medical opinions is reversible error." *Id*. at 190 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)). *See also Byrd v. Astrue*, 2008 WL 3821971, * 3 (M.D.Ala. Aug. 13, 2008) ("Generally, an ALJ's failure to state with particularity the weight given different medical opinions is reversible error.").

Defendant admits that "the ALJ did not mention Dr. Anne by name in the decision" when arguing that this was not error because Dr. Anne only saw Thornton once and positing that "there was no opinion to weigh" because Dr. Anne proffered no

8

conclusions about the severity of Thornton's impairments. (Doc. 21, pp. 9-10.) Even if, to entertain defendant's implicit theory, this post-facto explanation by defendant's *counsel* could be taken as good cause offered by the *ALJ*, the defense would still not be able to show that the ALJ's (non-)treatment of Dr. Anne's opinion can lead to a proper decision to deny Thornton benefits. Likewise, the government's contention that Dr. Anne's opinion was not "entitled to the same deference as a typical treating source because she examined Plaintiff on only a single occasion" fails to advance their position because even if one consider's Dr. Anne's opinion as a mere *medical opinion* without giving her the status of a treating physician, the ALJ is still required to consider her findings. *See Crownover v. Astrue*, 2009 WL 6114340, * 11 (N.D.Fla. June 11, 2009) (stating that opinion of a one-time medical examiner "was a medical opinion that the ALJ was required to consider."). As this Court has previously stated:

> In recognition of the Commissioner's regulations, the Eleventh Circuit requires an ALJ to "'state specifically the weight accorded to each item of evidence and why he reached that decision.'" *Reese v. Sullivan*, 925 F.2d 1395, 1397 (11th Cir. 1991), quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Stated differently, in assessing the medical evidence in a particular case, an ALJ is "required to state with particularity the weight he gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (citation omitted).

*Sturdivant v. Astrue*, 2009 WL 4750612, *4 (S.D.Ala. Dec. 8, 2009).

Finally, it should be noted that the government, albeit without legal support, contends that Dr. Anne's opinion is not an opinion at all, since "she expressed no opinion as to the severity of Plaintiff's impairments" and made no "conclusions as to functional

9

limitations and capacities." (Doc. 21, p. 10.) Because Dr. Anne diagnosed Thornton with numerous mental problems and performed a Global Assessment of Functioning (GAF) review, however, it is clear to the undersigned that Dr. Anne's psychiatric assessment does indeed constitute a medical opinion.

Accordingly, this cause is due to be remanded for further consideration of Dr. Anne's opinion.

B.      **Marked versus Moderate Limitation in Relating to Coworkers**.  There is an additional reason, not raised by Plaintiff, why this case need be remanded to the Commissioner for further proceedings.

The ALJ specifically found in this case that Thornton retains "**the residual functional capacity to perform a full range of work at all exertional levels with the limitations/consideration[s] in Exhibits 3F and 4F and as set forth in medical expert testimony.**" (Tr. 26 (emphasis in original).)  To the extent the mental RFC findings of the non-examining reviewing physician, Dr. Robert Estock (Tr. 155-172 (importantly noting only moderate difficulties in maintaining social functioning and moderate limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes)), conflicted with those of the medical expert, Dr. Doug McKeown, who testified at the hearing (Tr. 40 & 40-41) ("From the Department's perspective . . . the predominant diagnosis would be under 12.08, which from the record and history would appear to be a schizoid and avoidant personality disorder. . . . The B criteria would reflect none to mild impairments of daily living, *marked impairment in social functioning*, and

10

none to mild on concentration, persistence and pace with no episodes of decompensation in work or work like settings in the past . . . 18 months to two years. An RFC would suggest no impairment of the ability to follow work rules, ***moderate to marked impairment of relating to coworkers***, ***a marked impairment of dealing with the public***, a mild impairment of using judgment, mild to moderate impairment of interacting with supervisors, mild to moderate impairment of dealing with work stresses, no impairment in functioning independently, and mild impairment in concentration, persistence and pace. . . . This would appear to be a condition that's existed since he was last employed in 2004." (emphasis added)), it is clear that the ALJ deferred to the testimony of the medical expert (*compare* Tr. 25 ("In social functioning, the claimant has marked difficulties.") *with* Tr. 27 ("After considering all of the evidence of record as to this claimant's impairments, ***I accept the testimony of our medical expert because I find that the testimony is credible[,] makes sense and[,] as an independent finder of facts[,] [I] believe the testimony to be true, accurate and correct.*** The residual functional capacity conclusions reached by the psychologists employed by the State Disability Determination Services also supported a finding of 'not disabled.'" (emphasis added)).

It is at this point in the evaluation process, however, that the ALJ's analysis broke down because the ALJ never specifically resolved whether Thornton suffers from a moderate or marked impairment in relating to coworkers. The importance in making this particular determination is reflected in the vocational expert's testimony, the VE testifying that "a marked limitation" would prohibit the plaintiff from performing "his

11

past relevant work or, in essence, any work." (Tr. 43.) Given the VE's uncontradicted testimony, and the unresolved issue relating to Plaintiff's mental RFC, this Court cannot find the ALJ's ultimate determination that Plaintiff's past relevant work does not require the performance of work-related activities precluded by his residual functional capacity (Tr. 27) to be supported by substantial evidence in the record. A remand for further proceeding is, therefore, warranted.

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for the purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shahala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this

matter.

**DONE AND ORDERED** this 19th day of April, 2010.

  s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**